AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Samsung Galaxy Note 10, currently stored at the ATF Columbus Field Office, 230 West St. Suite 300, Columbus, OH | ) ) ) ) ) ) ) Case No. 2:2·mj·771 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
**See Attachment A**

located in the **Southern** District of **Ohio**, there is now concealed *(identify the person or describe the property to be seized)*:
**See Attachment B**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 1951 | Interference with Interstate Commerce by Robbery |
| 18 USC 924(c)(1)(A)(ii) | Brandishing a Firearm During the Commission of a Crime of Violence |
| 18 USC 922(g)(1) | Being a Convicted Felon in Possession of a Firearm |

The application is based on these facts:

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of ____ days (give exact ending date if more than 30 days: ____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*TFO Bi V. B* (signed) TFO 6551
*Applicant's signature*

ATF TFO Brian V. Boesch
*Printed name and title*

Sworn to before me and signed in my presence. VIA Facetime

Date: Dec. 1, 2021

*Judge's signature*

City and state: Columbus, OH

Magistrate Judge Elizabeth Preston Deavers
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF **Samsung Galaxy Note 10 cellular phone, CURRENTLY LOCATED AT ATF Columbus Field Office evidence vault, 230 West St. Suite 300, Columbus, OH** | Case No. 2:21.mj.771 |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Task Force Officer (TFO) Brian V. Boesch, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Task Force Officer (TFO) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), and have been since July 6, 2014. I have been a police officer for the Columbus Division of Police since November 6, 1994. I was assigned as a robbery detective for 8 ½ years, investigating armed robberies and extortions before accepting the task force position with ATF. My investigations have resulted in successful state and federal prosecutions.

3. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

4. The property to be searched is a Samsung Galaxy Note 10, with an unknown serial number, that was located pursuant to a search warrant in the vehicle Kevin DANIELS drove to and from the robbery, hereinafter the "Device." The Device is currently located at the ATF Columbus Field Office evidence vault, 230 West St. Suite 300, Columbus, OH.

5. The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

6. On November 26, 2021, at approximately 7:37 p.m., a suspect, later identified as Kevin L. DANIELS, entered the T-Mobile store located at 5064 N. High St. in Columbus, Ohio. DANIELS approached the 1st clerk (C1) and asked to speak to the manager. The 2nd clerk (C2) came out of the back room to assist DANIELS. DANIELS then demanded all of their phones. When C2 did not react, DANIELS brandished a black semi-automatic handgun and again demanded all of the phones. DANIELS then led C1 and C2 to the back room and gave them each a plastic bag and told them to put the phones from the safe into the bags. DANIELS also directed C2 to place any cash from the cash safe into the bag she was provided. After obtained approximately 28 cell phones and approximately $650 in cash, DANIELS sprayed each clerk with pepper spray, temporarily blinding and incapacitating them. DANIELS then fled out the back door. DANIELS was unaware that C2 had placed a bait phone in the bag of stolen phones and cash. The bait phone contained a GPS tracker that was activated upon removal from the safe. The tracking company contacted the Columbus Division of Police (CPD) and alerted them

2

of the location of the bait phone. Several moments later, CPD officers identified the blue Audi Q7 that DANIELS was driving. A pursuit was initiated and after approximately twelve (12) minutes of fleeing from the police, DANIELS was apprehended. The Audi Q7 was impounded to the CPD impound lot and the contents inside were secured inside a locked building at the impound lot. On November 30, 2021, TFO Boesch executed a federal search warrant on the vehicle. Inside the vehicle, TFO Boesch recovered a loaded black Springfield XD40, .40 caliber handgun and a Samsung Galaxy Note 10 that was still plugged into a charging cable attached to the vehicle. Other items of evidence were also collected. During post Miranda interview, DANIELS admitted robbing the T-Mobile store.

7. Since August 22, 2021, there have been nine (9) other robberies of pharmacies in the central Ohio area that were committed in the same manner that DANIELS committed the T-Mobile robbery. The suspect approaches an employee and asks for assistance from that clerk, or another clerk and then brandishes a handgun and demands access to the store's safe. The suspect provides the employees with a plastic bag that he brought with him for them to place the cash into. After receiving the bag of cash, the suspect then sprays mace into the victim clerks faces, temporarily blinding and incapacitating them. The suspect description also matches that of DANIELS with victims describing the suspect as being anywhere from 5'7 to 6'0 and weighing between 250 to 300 pounds.

8. Your affiant is aware that cell phones often record location information of the handset and also contain mapping applications that give directions to specific locations. The cell phones can also access the internet to enter specific locations into search engines and will maintain this information. The cell phones also maintain text history if the suspect

3

communicates his/her criminal activity with others. These devices also have cameras and photo galleries that the owner will keep photos of evidence of their criminal activity or of the proceeds from the robberies they commit. Therefore, you affiant requests this warrant to conduct a forensic examination of the Device to determine if the Device was in the area of the other mentioned robberies or contains evidence of DANIELS' participation in the other mentioned robberies.

9. The Device is currently in the lawful possession of the ATF. It came into the ATF's possession in the following way: seized pursuant to a federal search warrant of the Audi Q7. Therefore, while the ATF might already have all necessary authority to examine the Device, I seek this additional warrant out of an abundance of caution to be certain that an examination of the Device will comply with the Fourth Amendment and other applicable laws.

10. The Device is currently in storage at ATF Columbus Field Office evidence vault. In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the ATF.

## TECHNICAL TERMS

11. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of

4

transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

5

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

6

e.  IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

f.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

12. Based on my training, experience, and research I know that the Device has capabilities that allow it to serve as a mapping assistance application, location storage device, storage of text messages, camera and photo gallery, IP addresses for internet searches and call logs. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

7

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

13. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

14. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

15. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

16. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

9

## CONCLUSION

17. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

TFO B— V. Boesch  TFO 6551

Brian V. Boesch
Task Force Officer (TFO)
Bureau of Alcohol, Tobacco, Firearms and
Explosives (ATF)

Subscribed and sworn to before me
on December ___, 2021

ELIZABETH PRESTON DEAVERS
UNITED STATES MAGISTRATE JUDGE

## **ATTACHMENT A**

The property to be searched is a Samsung Galaxy Note 10, with an unknown serial number, that was located pursuant to a search warrant in the vehicle Kevin DANIELS drove to and from the robbery, hereinafter the "Device." The Device is currently located at the ATF Columbus Field Office evidence vault, 230 West St. Suite 300, Columbus, OH.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## **ATTACHMENT B**

1. All records on the Device described in Attachment A that relate to violations of 18 U.S.C. § 1951, 18 U.S.C. § 924(c)(1)(A)(ii), and 18 U.S.C. § 922(g)(1) and involve Kevin Loren DANIELS since August 22, 2021, including:

 a. Location information for the Device;

 b. Photographs of evidence, including cash, firearms, robbery locations, etc;

 c. Conversations via text messages about the crimes committed;

 d. any information recording DANIELS' schedule or travel from August 22, 2021 to the present;

 e. all bank records, checks, credit card bills, account information, and other financial records.

 f. Social media posts, messages, or content related to the robberies;

 g. Mapping applications showing searches to and from robbery locations;

 h. Internet browsing history and search engine history.

2. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored,

including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.